WILLIAM S. COATS (STATE BAR NO. 94864)
THOMAS H. ZELLERBACH (STATE BAR NO. 154557)
VICKIE L. FEEMAN (STATE BAR NO. 177487)
GABRIEL M. RAMSEY (STATE BAR NO. 209218)
PETER J. O'ROURKE (STATE BAR NO. 227164)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:   650-614-7400
Facsimile:    650-614-7401

Attorneys for Defendant
Ellie Mae, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CALYX TECHNOLOGIES, INC., dba CALYX SOFTWARE, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ELLIE MAE, INC., a California Corporation,<br><br>Defendant. | Case No.  C04 01640 SI<br><br>**DEFENDANT ELLIE MAE, INC.'S OPPOSITION TO CALYX TECHNOLOGIES, INC.'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:  September 3, 2004<br>Time:  9:00 a.m.<br>Dept:  Courtroom 10, 19th Floor<br>Judge:  Honorable Susan Illston |

I. **INTRODUCTION**

Calyx should not be granted leave to file its Second Amended Complaint insofar as that Complaint includes a hopelessly defective claim for alleged "trade dress" infringement under the Lanham Act with respect to certain screens of its Point software program. After three opportunities to do so, Calyx is still unable and/or unwilling to define its alleged "trade dress" with the specificity required under the law. Equally important, Calyx continues to emphasize functional elements of the allegedly protected screens, further demonstrating that there is no protectable trade dress at all. For these reasons, Calyx's Lanham Act claim would not survive yet another motion to dismiss for failure to state a claim. Moreover, because Calyx refuses to define its trade dress, neither Ellie Mae nor the Court have sufficient notice of what purported rights are allegedly infringed. This lack of notice is highly prejudicial to Ellie Mae's ability to prepare a defense and would seriously hinder the Court's ability to rule on crucial issues. For all of these reasons, Calyx's request for leave to amend its Lanham Act claim should be denied.[1]

II. **FACTUAL BACKGROUND**

A. **Calyx's Trade Dress Allegations In The Original Complaint**

In its initial complaint, filed April 27, 2004, the extent of Calyx's identification of its purported trade dress was to state that certain screens in the Point program have some undefined "look and feel" and to allege that Ellie Mae has "adopted and used a trade dress with its Encompass software that is confusingly similar to the trade dress used by Calyx." [Complaint, ¶¶ 9, 31] In that complaint, Calyx emphasized the functional efficacy of its screens stating that the Point "screen images have become widely known to [Calyx's] customers, the trade, and the purchasing public" for a variety of reasons "especially concerning the ease of use of the screens." [Complaint, ¶ 12]

From this conclusory Complaint, Defendant Ellie Mae was completely unable to determine what the purported trade dress was. Indeed, the Complaint did not even allege that the

---

[1] While Ellie Mae vigorously disputes the factual and legal validity of Calyx's copyright, false advertising and California unfair competition claims, Ellie Mae does not object to the filing of the Second Amended Complaint with respect to those claims only.

trade dress was non-functional, an essential element of any trade dress claim. Accordingly, Ellie Mae was prevented from effectively evaluating the validity of Calyx's cause of action. Therefore, on May 21, 2004, Ellie Mae filed a motion to dismiss the Lanham Act "trade dress" claim for failure to state a claim.

### B. Calyx's Trade Dress Allegations In The Amended Complaint

On June 4, 2004, Calyx filed an Amended Complaint instead of opposing Ellie Mae's motion to dismiss, and Ellie Mae accordingly withdrew its motion. Calyx's Amended Complaint, however, failed to cure the deficiencies in Calyx's pleading of its Lanham Act "trade dress" claim. Calyx's revised but paltry identification of its purported trade dress was as follows: "Calyx's unique screen displays are identified by their overall visual appearance, including the appearance and location of the individual elements of the screen displays." [Amended Complaint, ¶ 9] Calyx again cursorily alleged that Ellie Mae has "copied the source identifying trade dress of Calyx's Point screen displays." [Amended Complaint, ¶ 37] Despite the fact that Calyx stated summarily that the trade dress is allegedly "non-functional," elsewhere in the complaint Calyx again emphasized the functional aspects of the Point screens stating that they "represent the thoroughness, ease of use and depth of support" associated with the program. [Amended Complaint, ¶¶ 9, 39]

Because the Amended Complaint did not provide Ellie Mae with adequate notice of what "trade dress" it was alleged to have copied, Ellie Mae filed a second motion to dismiss for failure to state a claim. In its responsive briefing, Calyx did not oppose Ellie Mae's motion to dismiss. Rather, Calyx sought leave to file a Second Amended Complaint. This Court subsequently granted Ellie Mae's motion to dismiss, finding that "[t]he parties are in agreement with respect to the pleading deficiencies of the current Lanham Act claim." [Order, at 2] However, the Court deferred its decision on whether that dismissal would be without leave to amend the Lanham Act claim, pending briefing and hearing of Calyx's motion for leave to amend. [Order, at 2]

### C. Calyx's Trade Dress Allegations In Its Proposed "Second Amended Complaint"

While Calyx provides much more verbiage in its proposed Second Amended Complaint

regarding its alleged trade dress, Calyx still does not identify what the trade dress is. Rather, Calyx repeats the following, general statement as a purported identification of the trade dress in each of its alleged screens: "the overall visual appearance of the screen, including the selection of text, placement of text, fonts, placement of fields, and use of color." [Second Amended Complaint, ¶¶ 11-20] Instead of defining the specific elements of the very different screens in which Calyx claims trade dress, it has simply "cut and pasted" this boilerplate language into its allegations regarding the very different screens. Beyond this generic statement, Calyx does not anywhere define with particularity what comprises the alleged "total visual image of the screen displays" or "source-identifying trade dress of Calyx's Point screen displays." [Second Amended Complaint, ¶¶ 36, 90]

While Calyx rotely alleges that the purported trade dress is "non-functional," Calyx continues to describe, and even expand upon, the *functional* aspects of its Point screens. For example, Calyx attempts to define the purported trade dress therein as "the operations of its interface." [Second Amended Complaint, ¶¶ 11-20] Similarly, Calyx emphasizes the "thoroughness, ease of use and depth of support" associated with the program screens. [Second Amended Complaint, ¶ 10] As shown below, if Calyx's trade tress is functional as claimed by Calyx, it is not protectable and cannot be the basis of a valid claim.

### III. ARGUMENT

#### A. Calyx Still Fails To Identify Its Alleged Trade Dress With Sufficient Specificity, Thus Its Unfair Competition Claim Based On The Lanham Act Would Not Survive A Motion To Dismiss.

Despite two motions to dismiss, and repeated requests that it specifically identify its alleged "trade dress," Calyx has refused to do so. Even after acknowledging that it failed to describe its alleged trade dress in the first Amended Complaint, Calyx now asks this Court for leave to file a Second Amended Complaint that is longer-winded but equally vague about its Lanham Act claim. It is well-settled that allegations of trade dress infringement fail to state a claim unless a *detailed* description of the purported trade dress is provided. *See Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 949-50 (N.D. Cal. 2003) (plaintiff must define trade dress "with specificity"). Calyx's Lanham Act allegations violate this principle

1  and are thus subject to a motion to dismiss.

2  It is insufficient for Calyx merely to refer to the broad categories of: "the overall visual appearance of the screen, including the selection of text, placement of text, fonts, placement of fields, and use of color." [Second Amended Complaint, ¶¶ 11-20] *What* selection of text? *What* text, fonts, placement of fields and use of color? Indeed, Courts have routinely dismissed claims for trade dress infringement where the alleged description is defective in this way. For example, where a defendant alleged only that "the layout and presentation of merchandise by [plaintiff's business] is inherently distinctive in its size, shape, design, lettering, coloring, ordering over a counter, uniforms of employees, promotions, and packaging," the Court dismissed for inadequate description of the trade dress. *See Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1043 (D. Minn. 2003).[2] Calyx's description is equally vague and, for this reason, Calyx's Lanham Act claim in the Second Amended Complaint would not survive a motion to dismiss.[3]

Requiring a substantial level of detail in descriptions of trade dress is not simply a technical formality. The identification of alleged trade dress is particularly important in cases, such as this, where alleged trade dress is claimed in a product configuration rather than a container in which a product is packaged. The danger in this context is that trade dress could be used impermissibly to stifle competition in utilitarian designs. *See e.g. Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2003) ("[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves"); *Yurman Designs, Inc. v. PAG, Inc.*, 262 F.2d 101, 117 (2d Cir. 2001) ("trade dress claims [for product designs] raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods'"). The lack of detailed

---

[2] *See also Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir., 2003) (claiming "the unique configuration and ornamentation" and "the advertising and signage display" in properties was insufficient description); *Chem-Trainer Industries, Inc. v. Wilkin*, 44 U.S.P.Q. 2d 1114 (C.D. Cal. 1997) (preliminary injunction denied because plaintiff "fails to make clear what the trade dress for its product is").

[3] Calyx's attachment of pictures of various screens does not cure the pleading deficiencies. Indeed, there are numerous elements in each of the pictures and Calyx refuses to identify precisely which of those elements and combinations of elements are its alleged "trade dress."

description demonstrates that Calyx is claiming improperly broad protection. *See Yurman Design, Inc.*, 262 F.3d at 117 ("a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, *i.e.*, the claimant seeks protection for an unprotectable style, theme or idea.")[4]

Further, as a result of Calyx's insufficient, vague description of the alleged "trade dress," Ellie Mae would be prejudiced if Calyx is permitted to file its new Lanham Act claim because Ellie Mae still does not have adequate notice of what is allegedly being infringed. Similarly, the Court will be unable to decide relevant issues. One court has observed that:

> [F]ocus on the overall look of the product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise explanation of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection.

*Landscape Forms, Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 889-890 (N.D. Ill. 1999). Indeed, without a detailed description of the alleged trade dress "it would be impossible for the court to evaluate secondary meaning, genericness, or nonfunctionality." *Big Island Candies, Inc. v. The Cookie Corner*, 269 F. Supp. 2d 1236, 1246 (D. Hi. 2003).[5] For this reason as well, the Lanham Act claims in the Second Amended Complaint would not survive a motion to dismiss.

Further, Calyx has failed to allege facts which would show that its alleged trade dress is non-functional. To the contrary, Calyx simply asserts cursorily that the alleged trade dress is "non-functional," at the same time emphasizing many functional aspects of the Point screens elsewhere in the Second Amended Complaint. For example, Calyx attempts to claim the "the

---

[4] *See also, Big Island Candies, Inc.*, 269 F. Supp. 2d at 1243 (Courts will not extend protection to product lines "if the producer fails to identify a set of specific design elements that constitute its trade dress, in part because its failure to do so may indicate that its claim is overbroad.")

[5] This is a particular problem in the instant case, given that Calyx appears to be asserting a trade dress claim on blank mortgage industry forms incorporated into the Point product that are both functional and generic and thus non-protectable under any trade dress theory. *See e.g., Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987) (plaintiff must prove that its trade dress is nonfunctional), citing *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987); *Big Island Candies, Inc.*, 269 F. Supp. 2d at 1240 (generic product configurations not protectable).

operations of its interface," as purported trade dress. [Second Amended Complaint, ¶¶ 11-20] It is well settled that functional product features do not constitute trade dress and that, in any trade dress claim, the plaintiff bears the burden of proving that alleged trade dress is nonfunctional. *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987) (plaintiff must prove that its trade dress is nonfunctional). A product feature is functional and cannot serve as protectable trade dress if it "is essential to the use or purpose of the article." *Continental Laboratory Products, Inc.*, 114 F.Supp. 2d 992, 1013 (S.D. Cal. 2000). Clearly, the "operation" of the software interface itself meets this criterion. Similarly, Calyx emphasizes the attributes of "thoroughness" and "ease of use" in its alleged trade dress. These too are striking admissions of functionality. *See Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1009 (9th Cir. 1998) (seller's admissions of the utilitarian advantages constitutes strong evidence of functionality). Moreover, while Calyx includes the "selection of text" as part of its trade dress, it refuses to identify the text. No doubt this is because the "text" both is comprised of terms standard to the mortgage industry and serves a functional purpose in the forms that comprise the Point screens. Calyx is trying to cover fatal flaws in its trade dress claim by refusing to provide the required specific allegations that reveal those flaws.

Therefore, the Second Amended Complaint does not allege facts sufficient to show that the trade dress claimed by Calyx is non-functional. *See Gemmy Corp. v. Chrisha Creations Ltd.*, 2004 U.S. Dist. LEXIS 11468, *24 (S.D.N.Y. 2004) (complaint failed to allege facts sufficient to show trade dress was non-functional where it only contained conclusory allegations that the alleged trade dress consists of several "nonfunctional" elements); *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1043 (D. Minn. 2003) ("the generalized manner in which [plaintiff] has described its trade dress counsels a finding that it is seeking protection for an unprotectable idea, as opposed to some concrete specification of an idea . . . ."); *see also Chem-Trainer Industries, Inc. v. Wilkin*, 44 U.S.P.Q. 2d 1114 (C.D. Cal. 1997) (preliminary injunction denied because plaintiff "fails to identify the non-functional elements"). For all of these reasons, Calyx's Lanham Act claims in its Second Amended Complaint would not survive a motion to dismiss.

**B.   Calyx's Motion For Leave To File A Second Amended Complaint Should Be Denied With Respect To Calyx's Lanham Act Claim.**

The determination whether to grant leave to amend a complaint is an exercise of the court's discretion. Where a proposed amendment is subject to dismissal for failure to state a claim, leave to amend should be denied. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (court denied leave where amendment subject to dismissal). As detailed above, Calyx has failed to identify adequately its alleged trade dress and has failed to articulate any non-functional elements, despite having three opportunities to do so. There can be but one conclusion from this: Calyx is unable and/or unwilling to define any trade dress, as there is no set of facts under which such purported trade dress exists. Accordingly, the Lanham Act claim in the proposed Second Amended Complaint would not survive a motion to dismiss. For this reason, denial of leave to amend as to that claim is warranted. *See Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 677 (9th Cir. 1993) (leave denied when plaintiff alleged no new facts and gave no explanation for failure to do so).

It is particularly appropriate to deny leave to amend, given that Calyx has been afforded many opportunities to cure deficiencies in its Lanham Act claims, but has stubbornly refused to give Ellie Mae adequate notice of what is allegedly infringed. In denying leave to amend, Courts routinely consider whether there have been repeated failures to cure deficiencies by amendments previously allowed and whether amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (articulating factors). Here, despite three different amendments Calyx cannot or will not tell the Court and Ellie Mae what the trade dress is. Rather, Calyx simply restates the same facts as the original complaint in different terms. It is clear, then, that allowing leave to file the Second Amended Complaint would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (futility of amendment alone may justify denial); *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993) (leave denied where plaintiff amended twice before and new claim futile because failed to cure defects in earlier complaints).

Further, in deciding whether to deny leave to amend, courts consider whether there will be undue prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)

(articulating factors). Certainly, if Calyx were granted leave to file the second amended complaint, Ellie Mae would be prejudiced, as it remains unclear precisely what elements of the Point screens are purportedly infringed. Ellie Mae will be unable to effectively defend against such amorphous allegations. This supports denial of Calyx's motion to amend. *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (leave to amend denied because defendant "would have been prejudiced by lack of notice"). Moreover, allowing the filing of such a vague description of trade dress would result in waste of judicial resources and an undue burden on this Court, as Ellie Mae would have to conduct substantial litigation around the simple subject of "what" the alleged trade dress is. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982) ("the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation"); *see also Acosta-Mestre v. Hilton Intern. of Puerto Rico.*, 156 F.3d 49, 52-53 (1st Cir. 1998) (considering fact that amendment would impose additional, prejudicial discovery costs on defendant).

### IV. CONCLUSION

For the foregoing reasons, Ellie Mae respectfully requests that Calyx's motion for leave to file a Second Amended Complaint, be denied as to Calyx's Lanham Act claim.

Dated: August 13, 2004

WILLIAM S. COATS
VICKIE L. FEEMAN
THOMAS H. ZELLERBACH
GABRIEL M. RAMSEY
PETER J. O'ROURKE
ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Gabriel M. Ramsey
_____
Gabriel M. Ramsey
Attorneys for Defendant
Ellie Mae, Inc.