1  H. Jonathan Redway (*Pro Hac Vice*)
   White, Redway & Brown LLP
2  1217 King Street
   Alexandria, Virginia  22314
3  Telephone:  (703) 299-0035
   Facsimile:  (703) 299-0036
4
5  Michael K. Bosworth, Esq. (State Bar #75,887)
   Kirk M. Nuzum, Esq. (State Bar #144,745)
   BURNS, DOANE, SWECKER & MATHIS, LLP
6  333 Twin Dolphin Drive, Suite 700
   Redwood Shores, California  94065
7  Telephone: (650) 622-2300
   Facsimile: (650) 622-2499
8
9  Attorneys for Plaintiff

10
                   UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                       SAN FRANCISCO DIVISION
13

14 CALYX TECHNOLOGIES, INC., dba      )  Case No.  CO4 01640 SI
   CALYX SOFTWARE, a California       )
15 Corporation,                       )
                                      )
16              Plaintiff,            )
                                      )  SECOND AMENDED COMPLAINT FOR
17                                    )  FALSE DESIGNATION OF ORIGIN, FALSE
                                      )  ADVERTISING, COPYRIGHT INFRINGEMENT,
18 v                                  )  AND CALIFORNIA UNFAIR COMPETITION
                                      )
   ELLIE MAE, INC., a California      )
19 Corporation,                       )  Demand for Jury Trial
                                      )
20              Defendant.            )

21

22         Plaintiff, CALYX TECHNOLOGIES, INC., d.b.a. CALYX SOFTWARE ("Calyx"),

23 by and through its counsel, for its Second Amended Complaint against Defendant, ELLIE MAE,

24 INC. ("Ellie Mae"), alleges and states as follows:

25 //

26 //

27 //

28
                                       1

## NATURE OF THE CASE

1. This is an action for false designation of origin, false advertising, copyright infringement, and unfair competition arising from Ellie Mae's copying of Calyx's Point® loan processing software, Ellie Mae's misuse of Calyx's trademarks, Ellie Mae's false advertising concerning the hiring and former employment of Mr. Robert Madsen, Ellie Mae's false advertising concerning the operations of Ellie Mae's ePASS Internet web transaction platform, and Ellie Mae's other false statements and deceitful conduct concerning Ellie Mae, Calyx, and their respective products.

2. By this action, Calyx seeks to enjoin Ellie Mae from creating false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), engaging in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), infringing Calyx's copyrights in violation of 17 U.S.C. § 501, and engaging in various acts of unfair competition in violation of California Business and Professions Code § 17200 and to recover damages for Ellie Mae's illegal acts.

## JURISDICTION

3. This action arises out of, among other things, 17 U.S.C. § 501 and 15 U.S.C. § 1125(a). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and 1338(b), 28 U.S.C. § 1331, and 15 U.S.C. § 1121 *et seq*. Jurisdiction of Calyx's state law claim is conferred by principles of ancillary and pendant jurisdiction pursuant to 28 U.S.C. § 1367(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Ellie Mae transacts affairs in this district and a substantial part of the events giving rise to the claims asserted herein arose in this district.

## THE PARTIES

5. Plaintiff Calyx is a corporation organized and existing under the laws of the State of California, with its principal place of business at 6475 Camden Avenue, Suite 207, San Jose,

1  California 95120.

2      6.    On information and belief, defendant Ellie Mae is a corporation organized and existing under the laws of the State of California, with its principal place of business at 4140 Dublin Blvd., Suite 300, Dublin, California 94568.

# FALSE DESIGNATION OF ORIGIN

### I.    CALYX'S POINT® SOURCE IDENTIFYING SCREEN DISPLAYS

    7.    Calyx designs, markets, sells, and distributes software for use by mortgage brokers and lenders.

    8.    Calyx's Point® software is a loan processing software that automates, among other things, loan marketing, prequalification, origination, and processing.

    9.    Since at least as early as 1991, Calyx has continuously used unique screen displays as part of its Point® software in commerce to identify and promote its loan processing software and to distinguish its loan processing software from the software offered by others.

    10.    The unique and distinctive screen displays in the Point® software are identified by their overall visual appearance. These unique and distinctive screen displays have come to represent the thoroughness, ease of use, and depth of support associated with Calyx's Point® loan processing software.

    11.    The unique Rent vs. Own screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the selection of text, placement of text, fonts, placement of fields, and use of color. Calyx's unique Rent vs. Own screen is also identified and distinguished by the operations of its interface. (Exhibit 1 at p. 1)

    12.    The unique Mortgage Credit Analysis Worksheet screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color. Calyx's unique Mortgage Credit Analysis Worksheet is also identified and distinguished by the operations of its interface. (Exhibit 1 at p. 2)

3

1  13.  The unique HMDA Tracking screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color.  Calyx's unique HMDA Tracking screen display is also identified and distinguished by the operations of its interface.  (Exhibit 1 at p. 3)

14.  The unique Loan Comparison screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color.  Calyx's unique Loan Comparison screen display is also identified and distinguished by the operations of its interface.  (Exhibit 1 at p. 4)

15.  The unique Prequalification screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color.  Calyx's unique Prequalification screen display is also identified and distinguished by the operations of its interface.  (Exhibit 1 at p. 5)

16.  The unique Loan Application screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color.  Calyx's unique Loan Application screen display is also identified and distinguished by the operations of its interface.  (Exhibit 1 at pp. 6-8)

17.  The unique VA Rate Refinance Worksheet screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color.  Calyx's unique VA Rate Refinance Worksheet screen display is also identified and distinguished by the operations of its interface. (Exhibit 1 at p. 9)

//

//

Redwood 81366   SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; COPYRIGHT INFRINGEMENT, AND CALIFORNIA UNFAIR COMPETITION

1  18. The unique FHA 203k Maximum Mortgage Worksheet screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color. Calyx's unique FHA 203k Maximum Mortgage Worksheet screen display is also identified and distinguished by the operations of its interface. (Exhibit 1 at p. 10)

19. The unique Good Faith Estimate screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color. Calyx's unique Good Faith Estimate screen display is also identified and distinguished by the operations of its interface. (Exhibit 1 at p. 11)

20. The unique Statement of Credit Denial screen display in the Point® software is identified and distinguished by the overall visual appearance of the screen, including the size and selection of text, placement of text, fonts, placement of fields, and use of color. Calyx's unique Statement of Credit Denial screen display is also identified and distinguished by its unique interface. (Exhibit 1 at p. 12)

21. Since 2000, Calyx has spent more than a million dollars promoting and advertising its Point® mortgage application software and screen displays.

22. Calyx attends an average of 60 mortgage-related trade shows per year. At many of these trade shows, demonstration copies of Calyx's Point® software containing depictions of Calyx's Point® screen displays are distributed to mortgage professionals.

23. Today, more than 30,000 mortgage companies in all 50 states within the United States use Calyx's Point® loan processing software and Calyx's Point® screen displays.

24. According to a recent survey conducted by Wholesale Access, 66% of all mortgage brokers use Calyx's Point® loan processing software. (Copy Attached as Exhibit 3)

//
//
//

5

1    25.    At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point ® loan processing software.

26.    At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Rent Vs. Own loan processing screen image has become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

27.    At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Mortgage Credit Analysis Worksheet loan processing screen image has become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

28.    At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® HMDA Tracking loan processing screen image has become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

//

1  29.   At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Loan comparison loan processing screen image has become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

30.   At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Prequalification loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

31.   At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Loan Application loan processing screen image have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

32.   At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® VA Rate Refinance Worksheet loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

Redwood 81366    SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; COPYRIGHT INFRINGEMENT, AND CALIFORNIA UNFAIR COMPETITION

1  33.  At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® FHA 203k Maximum Mortgage Worksheet loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

34.  At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Good Faith Estimate loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

35.  At least as a result of Calyx's efforts to promote its Point® loan processing software and screen images, the continuous use by mortgage professionals of Calyx's Point® loan processing software and computer screen images, and the critical review and acclaim Calyx has received for its Point® loan processing software, including its computer screen images, Calyx's Point® Statement of Credit Denial loan processing screen images have become widely known to its customers, the trade, and the purchasing public as indicating the source of origin of Calyx's Point® loan processing software.

36.  At least as a result of the extensive exposure of Calyx's Point's® software, the total visual image of the screen displays of Calyx's Point® (1) Rent vs. Own (2) Mortgage Credit Analysis Worksheet (3) HMDA Tracking (4) Loan comparison (5) Prequalification, (6) Loan Application, (7) VA Rate Refinance Worksheet, (8) FHA 203k Maximum Mortgage Worksheet, (9) Good Faith Estimate, and (10) Statement of Credit Denial, in the aggregate and along with other Point® screen displays, also have trade identity distinctiveness.

//

37. The aforesaid total visual images represent substantial and valuable goodwill of Calyx and serve as a representation of the high quality of Calyx's Point® mortgage software.

## II. ELLIE MAE'S FREE RIDE CAMPAIGN

38. On information and belief, Ellie Mae designs, markets, sells and distributes loan processing software for use by mortgage brokers and lenders.

39. On information and belief, Ellie Mae designs, markets, sells, and distributes "Genesis 2000" and "Contour" loan processing software.

40. On information and belief, at all times relevant to this complaint, Ellie Mae, in common with the purchasing public and trade, has been well aware of the vast goodwill represented and symbolized by the screens viewed by users of Calyx's Point® mortgage application software.

41. On information and belief, in the fall of 2003, Ellie Mae introduced new loan processing software entitled "Encompass."

42. Ellie Mae markets, sells, and distributes its new "Encompass" software for use by mortgage brokers and lenders.

43. On information and belief, Ellie Mae deliberately copied Calyx's Point® screens when creating its "Encompass" program in order to trade on Calyx's trade identity and goodwill, including at least the following Calyx Point® source-identifying screen displays: (1) Rent vs. Own (2) Mortgage Credit Analysis Worksheet (3) HMDA Tracking (4) Loan comparison (5) Prequalification, (6) Loan Application, (7) VA Rate Refinance Worksheet, (8) FHA 203k Maximum Mortgage Worksheet, (9) Good Faith Estimate, and (10) Statement of Credit Denial. (*Compare* Point® screens attached as Ex. 1 *with* "Encompass" screens attached as Ex. 2).

44. A news article posted on Ellie Mae's Internet web site contains the following quote from Carteret Mortgage CEO Eric Weinstein:

> "One of my concerns was that I'm not going to force every body to use [Ellie Mae's] system that no one likes," said Carteret Mortgage CEO Eric Weinstein. "But I saw the system. The [Encompass] system has the look and feel of Point. In fact, they went right down to even having the screens the same color. So by basically

having the feel of Point – and that's the software most people like – they were able to overcome that because no one wants to use [Ellie Mae's] Genesis and Contour." (*See* news article from Ellie Mae's Internet web site attached as Exhibit 4).

45. The same article also contains an admission by Mr. Corr -- of Ellie Mae -- that Ellie Mae captured the look and feel of the industry's most successful loan origination software [Point®]. (*See* news article from Ellie Mae's Internet web site attached as Exhibit 4).

46. A posting on http://www.brokeruniverse.com/grapevine/thread/?thread=76040 states: "I have Point, but I ordered the Encompass program when it came out just to see what it was like since it was free. … [I] felt like I was using Point in many parts of the program when I was looking at it."

47. Ellie Mae has also used Calyx's Point® logo improperly on its Internet web site and this has strengthened the false impression that Calyx is somehow associated or affiliated with Ellie Mae.

48. Ellie Mae's ePASS Internet Web page has depicted the Calyx logo along side the Contour and Genesis logos -- beneath the ePASS logo -- so as to create the false impression that ePASS, Contour, Genesis, and Calyx are somehow associated or affiliated.

49. Ellie Mae's deceitful conduct is creating a likelihood of confusion.

50. On information and belief, Ellie Mae's deceitful conduct has created actual confusion in the market and Ellie Mae is profiting from its illegal conduct.

## ELLIE MAE'S FALSE ADVERTISING

### I. FALSE REPRESENTATIONS CONCERNING MR. ROBERT MADSEN

51. Ellie Mae is making false and misleading statements in interstate commerce concerning Ellie Mae's hiring of Mr. Robert Madsen.

52. On information and belief, Ellie Mae placed advertising in the June 2004 issues of *National Broker Magazine* and *Mortgage Originator Magazine*, a copy of which is attached hereto as Exhibit 5.

1     53.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
2 *Magazine* and *Mortgage Originator Magazine* poses the question "Why did the top salesperson for
3 Calyx® Point® join Ellie Mae®?"

4     54.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
5 *Magazine* and *Mortgage Originator Magazine* answers the question "Why did the top salesperson
6 for Calyx® Point® join Ellie Mae®?" with a photograph of Mr. Robert Madsen along side the word
7 "Encompass" above a sentence that states: "For 12 years, Robert Madsen handled territory sales and
8 business development for Calyx Point as their top Marketing Partner."

9     55.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
10 *Magazine* and *Mortgage Originator Magazine* that is attached hereto as Exhibit 5 is false because
11 the top sales person for Calyx® Point® never joined Ellie Mae.

12     56.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
13 *Magazine* and *Mortgage Originator Magazine* that is attached hereto as Exhibit 5 is false because
14 Mr. Robert Madsen was never Calyx's® top Marketing Partner.

15     57.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
16 *Magazine* and *Mortgage Originator Magazine* that is attached hereto as Exhibit 5 is false because
17 Mr. Robert Madsen never handled business development for Calyx®.

18     58.     The Ellie Mae advertising which appeared in the June 2004 issue of *National Broker*
19 *Magazine* and *Mortgage Originator Magazine* that is attached hereto as Exhibit 5 is false because
20 Mr. Robert Madsen did not join Ellie Mae for "Encompass".

22     **II**     **FALSE REPRESENTATIONS CONCERNING ePASS**

23     59.     In addition, Ellie Mae is deliberately making false and misleading statements in
24 interstate commerce regarding ePASS.

25     60.     On information and belief, Ellie Mae offers an Internet web transaction platform to
26 customers that it calls ePASS that purports to link third-party originators to wholesale lenders and
27 settlement service providers.

28

61. Ellie Mae posted on its Internet web site at http://www.elliemae.com/AboutUs/NewsEvents/news/pr_040704.asp the statement:

> "Originators can access ePASS directly from all major loan origination software, including Encompass, Genesis, Contour, Calyx Point, and Byte."

62. On information and belief, Ellie Mae issued a press release on or about April 7, 2004, that states, among other things:

> For mortgage originators, this connectivity enables seamless and simple uploading of loan files directly from their desktop software into the lenders' systems with just two mouse clicks, reducing redundant data entry and complicated file transfers, while at the same time greatly increasing the use of the lender's advanced functionality including prequalification, eligibility checking, automated underwriting, loan registration, rate locking, and more. Originators can access ePASS through all major loan origination software including Encompass, Genesis, Contour, Calyx® Point® and Byte™.

(TMEC News press release attached at Exhibit 6)

63. The statement that Ellie Mae's ePASS Internet Web transaction can be accessed though Point® is literally false because the ePASS interface has not been available in versions of Point® released since May 2002.

64. Ellie Mae has known at all relevant times that the ePASS interface has not been available in versions of Point® released since May 2002.

65. Ellie Mae is deliberately misleading the trade and purchasing public.

66. On information and belief, Ellie Mae employees have also falsely informed brokers that Point® will soon be using ePASS.

67. For example, the following statement was posted on the Internet at http://www.brokeruniverse.com/grapevine/thread/?thread=55636:

//

//

12

> Yours truly was the first here to report what was going to happen with Genesis, Ellie Mae, ePASS, Point, etc. I was told Point is going to use ePASS anyway. The source is VERY reliable and puzzles me.

68. The following statement was also posted on the Internet at http://www.brokenuniverse.com/grapevine/thread/?thread=45555:

> Been talking with Genesis for a long time about this change. They own Gen and Contour but I was told they were making a deal with Point to have their info driven thru ePASS, (which I do not care for).

69. At least as a result of Ellie Mae's false and misleading statements, Calyx has received inquiries from customers who appear to believe that Calyx is associated or affiliated with Ellie Mae and ePASS or about to become so.

70. When not deliberately creating the false impression the Calyx is somehow associated with ePASS, Ellie Mae is making false statements concerning Calyx designed to mislead and scare Calyx's customers.

71. The following statement was posted on Ellie Mae's Internet web site at http://www.elliemae.com/Encompass/evsp.asp:

> Encompass uses a secure server to enable secure, legally complaint collaboration by loan officers and processors. When you work remotely, Encompass automatically transfers files using secure Internet SSL protocol. This also assures that borrowers can download forms securely. Point advocates sending files via email, which new borrower security regulations have made illegal (and can result in $10,000 fines in each instance.

72. The statement is false because Calyx does not advocate sending files through email.

73. On information and belief, Ellie Mae also has made false statement to customers that Ellie Mae intends to buy Calyx, Ellie Mae has a special relationship with Calyx, or Calyx is going out of business.

//

13

74. The news article posted on Ellie Mae's Internet web site and attached hereto as Exhibit 4 states that despite Calyx's assurances to Mortgage Technology that Calyx has no relationship with Ellie Mae, "that lack of relationship may not be immediately evident to users of the new [Encompass] Ellie Mae offering."

## COPYRIGHT INFRINGEMENT

### I.    CALYX'S COPYRIGHT REGISTRATIONS

75. A copyright in the entirety of Calyx's Point® computer program version 3.0F, including text and compilation on screen displays, registered on May 24, 2004, as TX 5-953-460.

76. A copyright on Calyx's revised computer Point® program version 3.5, including compilation of terms and revised and additional text on screen displays, registered on May 24, 2004, as TX- 5-953-459.

77. A copyright on Calyx's revised computer Point® program version 3.7, including revised and additional text and compilation on screen displays, registered on June 2, 2004, as TX 5-953-427.

78. A copyright on Calyx's revised computer Point® program version 3.8, including compilation of terms and revised and additional text on screen displays, registered on May 24, 2004, as TX 5-953-458.

79. A copyright on Calyx's revised computer Point® program version 4.0, including compilation and revised and additional text on screen displays, registered on May 24, 2004, as TX 5-953-457.

80. A copyright in the entirety of Calyx's Point® program version 4.2 registered on June 13, 2003 as Number TX 5-876-770.

81. A copyright in the screen displays of Calyx's Point® program version 4.2 claiming compilation of terms and revised additional text on screen displays was registered on March 3, 2004 as Number TX 5-892-873.

//

**II.      ELLIE MAE'S ACTS OF COPYRIGHT INFRINGEMENT**

82. On information and belief, Ellie Mae had access to Calyx's Point® program when creating its "Encompass" program.

83. On information and belief, Ellie Mae copied Calyx's Point® program when creating its "Encompass" program, including at least the following Calyx® screen displays:  (1) Rent vs. Own (2) Mortgage Credit Analysis Worksheet (3) HMDA Tracking (4) Loan comparison (5) Prequalification, (6) Loan Application, (7) VA Rate Refinance Worksheet, (8) FHA 203k Maximum Mortgage Worksheet, (9) Good Faith Estimate, and (10) Statement of Credit Denial.  (*Compare* Point® screens attached as Ex. 1 *with* "Encompass" screens attached as Ex. 2)

84. On information and belief, Ellie Mae deliberately copied Calyx's Point® program when creating its "Encompass" program, including at least the following Calyx® screen displays: (1) Rent vs. Own (2) Mortgage Credit Analysis Worksheet (3) HMDA Tracking (4) Loan comparison (5) Prequalification, (6) Loan Application, (7) VA Rate Refinance Worksheet, (8) FHA 203k Maximum Mortgage Worksheet, (9) Good Faith Estimate, and (10) Statement of Credit Denial.  (*Compare* Point® screens attached as Ex. 1 *with* "Encompass" screens attached as Ex. 2)

## COUNT ONE
## FEDERAL UNFAIR COMPETITION

85. Calyx repeats and re-alleges each and every allegation of paragraphs 1-50 as though fully set forth herein.

86. Calyx's protected trade dress is non-functional.

87. The aforesaid acts constitute federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88. As a direct consequence of Ellie Mae's unlawful acts and practices, Calyx has suffered, and will continue to suffer, damage to its business, reputation and goodwill, for which Calyx is entitled to relief.

//

Redwood 81366 | SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; COPYRIGHT INFRINGEMENT, AND CALIFORNIA UNFAIR COMPETITION

89. Ellie Mae's use of a trade dress that is confusing similar to Calyx's is likely to cause confusion, or to cause mistake, or deceive as to affiliation, connection, or association.

90. Ellie Mae has knowingly and willfully copied the source-identifying trade dress of Calyx's Point® screen displays and, on information and belief, is likely to increase its copying in the future, to take advantage of the goodwill established by Calyx with respect to the Point® screen displays.

91. On information and belief, unless enjoined by an Order of this Court, Ellie Mae will continue to use screens that it knowingly and intentionally copied from Calyx's Point® loan processing software, and will knowingly and intentionally copy additional screens from Calyx's Point® software in future versions of its "Encompass" software.

92. By virtue of Ellie Mae's unlawful conduct, Calyx has suffered, and will continue to suffer, irreparable injury and damage to its business reputation and hard earned goodwill in the screen displays of its Point® mortgage software application.

93. On information and belief, Ellie Mae knowingly created and is deliberately using screens with "Encompass" that are confusingly similar to screens used with Calyx's Point® screens with a willful and callous disregard of the rights of Calyx.

94. By reason of Ellie Mae's unlawful acts and practices, Ellie Mae has caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Calyx for which there is no adequate remedy at law, and for which Calyx is entitled to injunctive relief.

## COUNT TWO
## FALSE ADVERTISING

95. Calyx repeats and re-alleges each and every allegation of paragraphs 1-8, 38-39, and 51-74 as though fully set forth herein.

96. The false statements made by Ellie Mae are literally false.

//

97. The false statements made by Ellie Mae have a tendency to deceive a substantial segment of the intended audience.

98. The deception created by Ellie Mae's false statements is material and likely to influence purchasing decisions.

99. The goods that are the subject of Ellie Mae's false advertising travel in interstate commerce.

100. Calyx® has been and continues to be damaged by Ellie Mae's false advertising.

101. Ellie Mae's deceitful conduct was done intentionally for improper purpose.

102. By reason of Ellie Mae's unlawful acts and practices, Ellie Mae has caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Calyx for which there is no adequate remedy at law, and for which Calyx is entitled to injunctive relief.

## COUNT III

## COPYRIGHT INFRINGEMENT

103. Calyx repeats and re-alleges each and every allegation in paragraphs 1-8, 38-39, and 75-84 as though fully set forth herein.

104. Calyx's Point® software is an original work of authorship and protected by copyright.

105. The literal and non-literal components of the Point® program qualify as expressions of ideas.

106. Ellie Mae copied Calyx's Point® software.

107. Ellie Mae's "Encompass" software is substantially similar to Calyx's Point® software in both ideas and expression.

108. Ellie Mae's copying of the Point® software was done intentionally for improper purpose.

109. By reason of Ellie Mae's unlawful acts and practices, Ellie Mae has caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Calyx for which there is no adequate remedy at law, and for which Calyx is entitled to injunctive relief.

## COUNT FOUR

## CALIFORNIA UNFAIR COMPETITION

110. Calyx repeats and re-alleges each and every allegation of paragraphs 1-74 as though fully set forth herein.

111. Ellie Mae's intentional and blatant trading on the goodwill associated with the screen shots of the Point® program and placement of false advertising and making of false statements constitutes unfair competition, unfair and fraudulent business acts and practices and unfair, deceptive, untrue and misleading advertising under California Business and Professions Code § 17200.

WHEREFORE, Calyx requests the following relief:

1. That Ellie Mae, its officers, directors, shareholders, principals, agents, servants, employees, attorneys, and related companies, and all persons in active concert or participation with one or more of them, be preliminarily and permanently enjoined and restrained from unlawfully infringing Calyx's copyright and trade dress rights and engaging in unfair competition;

2. That this Court award Calyx damages adequate to compensate Calyx for Ellie Mae's acts of copyright infringement, trademark infringement, and unfair competition;

3. That Calyx be awarded its actual damages and lost profits in an amount to be proven at trial;

4. That Ellie Mae be required to account for any profits attributable to its infringing acts;

1    5.    That Calyx be awarded the full extent of damages to which it is entitled pursuant to
2    17 U.S.C. § 504;
3    6.    That Calyx be awarded the greater of three times Ellie Mae's profits or three times
4    any damages sustained by Calyx, and prejudgment interest;
5    7.    That Calyx be awarded corrective advertising;
6    8.    That punitive damages be awarded to Calyx;
7    9.    That all infringing materials shall be recalled from the purchasers and delivered up by
8    Ellie Mae and destroyed; and
9    10.    That Calyx shall be awarded such other and further relief as the Court may deem just
10   and proper.
11
12   Dated: September 10, 2004            By:    /S/ H. Jonathan Redway
                                                H. Jonathan Redway, Esq.
13                                              White, Redway & Brown LLP
                                                1217 King Street
14                                              Alexandria, Virginia
                                                Telephone:  (703) 299-0035
15                                              Facsimile:   (703) 299-0036
16
                                                Michael K. Bosworth, Esq.
17                                              Kirk M. Nuzum, Esq.
                                                Burns, Doane, Swecker & Mathis, LLP
18                                              333 Twin Dolphin Drive, Suite 700
                                                Redwood Shores, California  94065
19                                              Telephone: (650) 622-2300
                                                Facsimile: (650) 622-2499
20
21
22
23
24
25
26
27
28

19

Redwood 81366 | SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; COPYRIGHT INFRINGEMENT, AND CALIFORNIA UNFAIR COMPETITION

1   I, Kirk M. Nuzum, declare:

2   I am a resident of the State of California and over the age of eighteen years, and not a party

3   to the within action. I served the within document(s):

4   **SECOND AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, COPYRIGHT INFRINGEMENT AND CALIFORNIA UNFAIR COMPETITION**

| | | |
|---|---|---|
| | X | By **ELECTRONIC FILING** On the attorneys registered to receive service by email through the N.D. Cal. Electronic Case Filing System. |
| | | By transmitting via **FACSIMILE** the document(s) listed above to the fax number(s) set forth below on this date before 5:00 pm. |
| | | By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the **UNITED STATES MAIL** at Redwood Shores, California, addressed as set forth below. |
| | | By causing personal delivery by **SWIFT ATTORNEY SERVICE** located at 500 Allerton Street, Suite 105, Redwood City, California, 94063, of the document(s) listed above to the person(s) at the address(es) set forth below. |
| | | By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below. |
| | | By placing a true and correct copy of the documents in a **FEDERAL EXPRESS** envelope addressed as set forth below and then sealing the envelope, affixing a prepaid Federal Express air bill, and causing the envelope to be delivered to a Federal Express agent for delivery. |

| | |
|---|---|
| William S. Coats<br>Thomas H. Zellerbach<br>Vickie L. Feeman<br>Susan L. Masetti<br>Peter J. O'Rourke<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>1000 Marsh Road<br>Menlo Park, CA  94025<br><br>Fax No. (650) 614-7401 | |

Executed on September 10, 2004, at Redwood Shores, California.

I declare under penalty of perjury that the foregoing is true and correct.

　　　/S/  Kirk M. Nuzum
Kirk M. Nuzum