**United States District Court**
For the Northern District of California

1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    CALYX TECHNOLOGIES, INC., et al.,              No. C 04-1640 SI

           Plaintiffs,                    **ORDER GRANTING MOTION FOR**
9        v.                               **SUMMARY JUDGMENT**

10   ELLIE MAE, INC.,

11         Defendant.

12   _____/

13         On August 19, 2005, the Court heard argument on defendant's motion for partial summary judgment.

14   Having considered the papers on file and the arguments of the parties, the motion is GRANTED for the reasons

15   set out below.

16

17                              **BACKGROUND**

18         Plaintiff Calyx Technologies, Inc. designs, markets, sells and distributes loan origination software (LOS)

19   for use by mortgage brokers and lenders.  Calyx's top-selling software program, Point, had a market share

20   above 65% in 2002 and 2004.  Defendant Ellie Mae also designs, markets, sells and distributes loan processing

21   software for use by mortgage brokers and lenders. Ellie Mae purchased two LOS providers, Genesis 2000

22   and Contour Software, in 2000-2001.  Additionally, in Fall 2003, Ellie Mae introduced Encompass, a new

23   LOS program.

24         Both Encompass and Point provide the user with a variety of forms necessary to processing a loan.

25   For example, the programs allow the user to input the customer's personal information, such as name, address,

26   and phone number.  The programs also contain functions that allow the customer to contrast the costs between

27   renting a property and purchasing one, or between various types of loans.  These functions are all performed

28   based on the user's input of customer data into the program.

United States District Court
For the Northern District of California

1   While the parties disagree over the motivation behind the creation of Encompass, it is clear that the

2   program performs many of the same functions as Point and contains portions of screen images that look similar

3   to comparable Point images.  As a result, Calyx filed suit in this Court, asserting causes of action against Ellie

4   Mae for 1) violation of the Lanham Act, 15 U.S.C. § 1125(a); 2) false advertising; 3) copyright infringement;

5   and 4) unfair competition under California Business and Professions Code § 17200.

6   Now before the Court is defendant's motion for partial summary judgment.  Defendant argues that it

7   is entitled to summary judgment for plaintiff's copyright (Count 3) and trade dress infringement (Count 1) claims

8   with respect to eight of the Point screens.[1]

9

10   **LEGAL STANDARD**

11   Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

12   on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

13   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears

14   the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett,

15   477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which

16   the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court

17   that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

18   The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a

19   genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party

20   must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita

21   Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a

22   scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

23   the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

24   In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the

25

26

27   [1] The eight Point screens at issue in this motion are: 1) "FHA Worksheet Pur"; 2) "VA Refi Worksheet"; 3) "FHA 203k Maximum Mortgage Worksheet"; 4) "Good Faith Estimate"; 5) "Loan Application"; 6) "HMDA"; 7) "Aggregate Escrow Account"; and 8) "Tracking: Trust Account."  The rulings made hereafter relate only to these screens.

28

1   non-moving party, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  "Credibility

2   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

3   functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

4

5                                          **DISCUSSION**

6   **1.     Copyright**

7           Plaintiff's Third Cause of Action is for copyright infringement under 17 U.S.C. § 501.  Defendant

8   argues that it is entitled to summary judgment on plaintiff's copyright claim based on the "blank forms" doctrine

9   set out in Bibbero Systems, Inc. v. Colwell Systems, Inc., 893 F.2d 1104  (9th Cir. 1990); based on the

10  doctrines of merger and *scenes a faire*; and based on plaintiff's failure to satisfy the originality requirement.

11          In order to prevail on its copyright claim, plaintiff must demonstrate ownership of a valid copyright in

12  the allegedly infringed work and copying of protected expression in the allegedly infringed work by defendant.

13  Triad Systems Corp. v. Southeastern Express Co., 64 F.3d 1330, 1335 (9th Cir. 1995).  Plaintiff registered

14  a copyright for the screen images at issue in this motion.  See Goldman Decl., Exs. 32-36 (obtaining copyright

15  for Point program, "screen displays" for Point, and "revised compilation of terms and revised and additional

16  text on screen displays").  "[A] certificate of copyright registration constitutes prima facie evidence of

17  copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid."  Bibbero

18  Systems, 893 F.2d at 1106.  Therefore, when defendant seeks summary judgment on the basis that plaintiff's

19  screen images are not entitled to copyright protection, defendant  bears the burden of demonstrating invalidity.

20          It should first be noted that the underlying computer source code for the Point LOS is clearly protected

21  by copyright; the parties do not dispute this.  However, it is also undisputed that defendant did not copy Point's

22  source code to create the Encompass program.  Therefore, the underlying source code is not at issue in this

23  case.

24          It is somewhat more difficult to determine what is at issue in this case.  Plaintiff has not clearly identified

25  what elements of the Point program it claims are protected by copyright.  Instead, plaintiff merely asserts that

26  the "screen displays" are protected.[2]  Plaintiff at one point refers to "text, calculators, password protectors,

27

28          _____

            [2] Plaintiff also uses the term "screens" when discussing protectable material.

3

United States District Court

For the Northern District of California

descriptors, autopopulation, active field highlighting, [and] lock boxes" on the "screens." Opp'n at 14. Plaintiff later asserts that the screens are copyrightable because "the text, compilation, and software read by the computer (automation) are designed to guide the mortgage professional in providing information necessary to complete the loan origination process." Opp'n at 16.

Plaintiff thus creates a moving target by presenting various explanations for what portion of the Point LOS is protected by copyright. In failing to articulate the scope of copyright protection for Point, plaintiff has ignored Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994), which stated that:

> Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered "as a whole."

Plaintiff contends that the analytic dissection requirement does not apply because Apple involved a licensing agreement between the parties in the litigation, which this case does not. However, courts must make distinctions between protectable and unprotectable material even in cases that do not involve license agreements. See Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 207-208 (9th Cir. 1989). Therefore, plaintiff should have described the scope of copyright protection it claims for the Point program in its opposition to defendant's motion. Because plaintiff did not, the Court will address this issue on its own.

If plaintiff asserts that features of Point such as calculators, password protectors, lock boxes, autopopulation, and other methods of operation fall under the protection of copyright, the Court finds that no such protection exists. Copyright protection does not apply to "any idea, procedure, process, system, method of operation . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). The Copyright Office recognized this when it granted plaintiff a copyright for "compilations of terms and text" and "screen displays." The copyright makes no reference to methods of operation or any of the features listed above.[3] The protection of copyright does not apply to ideas and processes, which fall under patent protection.

---

[3] Plaintiff, in its response to defendant's First Set of Interrogatories, does not assert that the methods of operation in the Encompass program infringe on its copyright. See Lambert Reply Decl., Ex. A at 3-5. Instead, plaintiff asserts that the Encompass "screen displays" constitute specific instances of infringement. Id. at 3.

United States District Court

For the Northern District of California

1    This leaves plaintiff arguable copyright protection only for the "compilations of terms and text" found

2   on the "screen displays" of the Point software.  Plaintiff asserts that Encompass, defendant's LOS, infringes

3   on its copyright because several of the Encompass screen displays look very similar to Point's screen displays.

4   Plaintiff has provided numerous copies of the screen displays in both programs, allowing the Court to compare

5   the two programs.  <u>See</u> Second Alcaraz Decl., Exs. 1-14.

6    In reviewing the screen displays from both programs, it is apparent that the Encompass screen displays

7   selected by plaintiff closely resemble comparable Point screen displays.  <u>Compare</u> Second Alcaraz Decl., Ex.

8   1-D <u>with</u> Ex. 1-E (containing "Rent vs. Own" screens for both programs). The similarity lies in the structure

9   of the screen displays and the terms used for the various entries.  The similarity is striking, but not exact:

10   Encompass does not use the same font, text color or background color as Point.  Therefore, plaintiff asserts

11   a copyright claim against defendant on the theory that the structure and terms used in the Encompass LOS

12   screen displays infringe plaintiff's copyright in Point.

13    The Court finds that plaintiff's copyright claim must fail under <u>Bibbero</u>, which established a strict

14   interpretation of the "blank forms" doctrine for the Ninth Circuit.  In <u>Bibbero</u>, plaintiff designed and marketed

15   "superbills" that were used by doctors to obtain reimbursement from insurance companies.  893 F.3d at 1105.

16   The superbill contained boxes for patient information, clauses assigning insurance benefits to the doctor and

17   authorizing release of patient information, and two "lengthy" checklists for the doctor to display the diagnosis,

18   services performed, and the fee.  <u>Id.</u>  Plaintiff produced approximately 25 superbills in its catalog for various

19   specialties.

20    Defendant produced a superbill that "was nearly identical to" plaintiff's superbill.  <u>Id.</u> at 1106.  After

21   defendant's superbill came to plaintiff's attention, it filed an application to register its superbill with the Copyright

22   Office, which was granted.  Plaintiff also filed suit against defendant for copyright infringement.  <u>Id.</u>   The court

23   recognized that the copyright registration was prima facie evidence of copyrightability, but found that the

24   superbill was an uncopyrightable blank form.  <u>Id.</u>   The court stated that "[t]he purpose of the Bibbero's

25   superbill is to record information.  Until the superbill is filled out, it conveys no information about the patient,

26   the patient's diagnosis, or the patient's treatment."  <u>Id.</u> at 1107.

27    As in <u>Bibbero</u>, plaintiff is claiming copyright protection for a series of forms created to allow the user

28

5

United States District Court
For the Northern District of California

to collect various pieces of information. Until the user inputs information, the form in this case contains no information about the customer seeking a mortgage.  In viewing the screen displays involved in this lawsuit, each display contains numerous empty boxes designed specifically for the user to input data.  The forms do not contain any text aside from labels to each of the empty boxes.  In this respect, the forms in this case are very similar to those in <u>Bibbero</u>.

The Court recognizes that <u>Bibbero</u> has been criticized by commentators and other circuits.  <u>See</u> <u>Advanz Behavioral Management Resources, Inc. v. Miraflor</u>, 21 F.Supp.2d 1179, 1189 (C.D.Cal. 1998) (describing criticism of <u>Bibbero</u>).[4]  However, this Court is bound by Ninth Circuit precedent, including <u>Bibbero</u>.  Under <u>Bibbero</u>, "the blank forms rule denies copyrightability to forms consisting entirely of spaces for the recording of information, whether labeled or unlabeled, that are not accompanied by text conveying information, such as instructions regarding the use of forms." <u>Advanz</u>, 21 F.Supp.2d at 1189.  <u>Bucklew v. Hawkins, Ash, Baptie & Co.</u>, 66 U.S.P.Q.2d 1820 (7th Cir. 2003), on which plaintiff relies to support its argument that its screen displays are copyrightable,  is both factually distinguishable from this case and substantially inconsistent with the analysis and holding in <u>Bibbero</u>.[5]

Plaintiff suggests several reasons why the <u>Bibbero</u> doctrine does not apply, but none is persuasive.  It first notes that the forms at issue in this case are found on a computer screen, while the forms in <u>Bibbero</u> were on paper.  This distinction, however, does not appear to the Court to make any difference, and plaintiff does not supply one.  Plaintiff argues that the forms in its program have "text, calculators, password protection, descriptors, autopopulation, active field highlighting, [and] lock boxes," unlike <u>Bibbero</u>.  However, as discussed above, plaintiff cannot receive copyright protection for methods of operation.  It is the "screen displays" that plaintiff claims are copyrightable, not the functionality of the program.  The structure and appearance of the displays would be very similar if found on a computer screen or printed on paper.  Therefore, this argument

---

[4] <u>Advanz</u> also provides a thorough description of the "blank forms" doctrine as interpreted by the Ninth Circuit.  21 F.Supp.2d at 1186-1190.

[5] <u>Bucklew</u> dealt "primarily to the copyright doctrines of merger and *scenes a faire*," rather than the blank forms question.  66 U.S.P.Q.2d at 1824.  Additionally, the defendant in <u>Bucklew</u> copied plaintiff's font, which was unavailable to defendant through any means aside from directly copying plaintiff's, and included tables from plaintiff's spreadsheet that contained no function in the program at issue.  <u>Id.</u> at 1822.  Neither of these factors is present in this case.

United States District Court

For the Northern District of California

is not persuasive.

Plaintiff argues that <u>Bibbero</u> does not apply because "the information that is found on each of the screens guides the user to how to successfully complete – in Calyx's view – that portion of the loan origination process." Opp'n at 15, quoting Cooley Decl. at ¶ 85. However, this argument was specifically rejected in <u>Bibbero</u>: "All forms seek only certain information, and, by their selection, convey that the information sought is important." 893 F.2d at 1107.[6] Finally, plaintiff argues that the screen displays are original creations containing an artistic element. However, the court in <u>Bibbero</u> refused to consider the effort and creativity required to create the forms in question. 893 F.2d at 1108 n. 2.

The Court finds that the text and structure of plaintiff's screen displays are not copyrightable under <u>Bibbero</u>. Plaintiff does not allege that defendant copied its source code in creating Encompass. Plaintiff cannot claim copyright protection for functions and methods of operation for the Point LOS, because they are precluded under copyright law. Once these aspects of plaintiff's program are stripped away, what remains is a series of forms used to collect information from a customer seeking a mortgage. The program provides no relevant information about the customer until the relevant customer information is input into the program by the user. This is similar to the superbill in <u>Bibbero</u>, which collected information about medical patients. In reviewing the screen displays presented by plaintiff, the predominant feature of the screens is the blank spaces designed specifically for the user to input the relevant customer data. Although others may disagree with the rationale of the "blank forms" rule, <u>Bibbero</u> is binding precedent on this Court.

Therefore, the Court finds that plaintiff does not have a valid copyright for the Point screen displays at issue in this case and GRANTS defendant's motion for summary judgment on plaintiff's copyright claim.

## 2.    Trade dress

Plaintiff's First Cause of Action is for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides a cause of action against any person who uses "any symbol or device . . . likely to

---

[6] Additionally, the court in <u>Bibbero</u> rejected the holding of <u>Norton Printing Co. v. Augustana Hospital</u>, 155 U.S.P.Q. 133 (N.D.Ill. 1967), which found copyrightable a medical laboratory test form because the format and arrangement used in the forms conveyed what information is deemed to be important.

United States District Court

For the Northern District of California

cause confusion . . . as to the origin of his or her goods." This provision protects words and symbols, as well as the packaging and design of a product, which is known as "trade dress." As defined by the Ninth Circuit, trade dress "refers to the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993).

Plaintiff asserts that the screen designs provided in the Second Amended Complaint qualify as protected trade dress. See Second Amended Complaint, Ex. 1. However, the images provided by plaintiff in the SAC do not constitute the "total image" of the product, but rather are only portions of the screens viewed by a user of Point or Encompass. See, e.g., Visnick Decl., Ex. B (showing full image created by Point and Encompass programs). The exhibits to the SAC omit approximately one-fourth of the actual image on the screen, which includes the logo and the word "Point" in the top left corner, and the toolbars above and below the various forms. In addition, the Encompass screens contain two windows to the left of the forms at issue, which were omitted in the SAC. All of these features, omitted in the SAC, differ greatly between Point and Encompass.

Plaintiff argues that these portions of the screen image are not part of the "total image" for purposes of trade dress because they are not the "most important screens." Cooley Decl. at ¶¶ 109-128. Instead, plaintiff argues that the images it included in the SAC are "crucial to the processing of a loan and on a use-weighted basis are by far the most important screens in any LOS." Id. However, plaintiff provides neither authority nor convincing explanation for why these omitted portions of the LOS screens are not part of the "total image" for purposes of trade dress, since they are all visible during use of the LOS programs. The Court finds that everything presented by the Encompass and Point programs, when the screens at issue are displayed, constitutes the "total image" for purposes of trade dress protection.

In order to recover for trade dress infringement under the Lanham Act, plaintiff must demonstrate that: 1) the design of the Point screen displays is non-functional; 2) the design has acquired secondary meaning; and 3) there is a likelihood that the consuming public will confuse Encompass with Point. Disc Golf Association, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1005 (9th Cir. 1998). Defendant argues that plaintiff has failed to meet any of these requirements. The Court finds that defendant is entitled to summary judgment because

United States District Court

For the Northern District of California

1  plaintiff has failed to demonstrate a likelihood of confusion as to the source or origin of the products.

2  Defendant asserts that once the screen displays are viewed as a whole, without eliminating the material

3  around the image of the form, Encompass can be easily distinguished from Point. Plaintiff responds that there

4  is a strong likelihood of confusion or origin based on the similarity of the images, relying on the declaration of

5  Scott Cooley, plaintiff's expert.

6  The Ninth Circuit has considered the following factors when determining the likelihood of confusion of

7  origin: 1) similarity of the conflicting designations; 2) relatedness of the two companies' products; 3) strength

8  of Calyx's trade dress; 4) marketing channels used; 5) degree of care likely to be exercised by purchasers; 6)

9  Ellie Mae's intent in selecting its mark; 7) evidence of actual confusion; and 8) likelihood of expansion in

10 product lines. Brookfield Communications v. West Coast, 174 F.3d 1036, 1055 (9th Cir. 1999). The

11 importance of these factors is case-specific. Id.

12 It is clear that Calyx and Ellie Mae sell products that are very similar and use similar marketing channels.

13 Plaintiff contends that there is likelihood of confusion as to the source of Encompass and Point based on the

14 declaration of Scott Cooley, plaintiff's expert. In support, plaintiff specifically cites the following testimony from

15 Cooley:

16         I believe that users wonder why the two products are identical. Most
           software applications in any field have a unique look and feel . . . . I
17         believe this creates confusion in our industry and it has allowed [Ellie Mae]
           to take advantage of Calyx's years of input screen refinement. By creating
18         screens that look more like Point, users are far more likely to try using
           Encompass because they believe Encompass has the same favorable
19         qualities that users have come to expect from Point.

20 Cooley Decl. at ¶ 114.

21 However, Cooley provides no basis for his "belief" that users wonder why the two products are

22 identical. There is no citation to any specific facts in support of his assertion, which must be provided to

23 withstand a motion for summary judgment. See Guidroz-Brault v. Missouri Pacific Railroad Company, 254

24 F.3d 825, 831 (9th Cir. 2001).

25 Plaintiff does not present any evidence of actual confusion through consumer surveys, which could

26 clearly establish, without relying on speculative expert testimony, that actual confusion as to origin exists.

27 Plaintiff argues that it has demonstrated actual confusion through Exhibits 28-30 of the Goldman Declaration.

28

Even if these documents withstand evidentiary objection,[7] they do not demonstrate actual confusion as to the source of the screen displays at issue in this case. Additionally, exhibits 29 and 30 do not involve Encompass. See Ex. 29 at 1 ("It actually doesn't have any direct connection to Encompass"); Ex. 30 (discussing Ellie Mae's ePass product, not Encompass). Therefore, plaintiff has not identified a customer that was confused as to the source of the screen displays at issue in this case.

Finally, plaintiff argues that the Court should find a likelihood of confusion as to source based on the similarity between the Point and Encompass screen displays at issue. It is clear that the portion of the displays that contains the various forms is highly similar. However, as discussed above, the Court will not view the forms in a vacuum. Instead, they must be viewed as a part of a larger screen image. This image contains each program's name and logo, which are not similar. The display also includes a tool bar at the top of the screen. These tool bars are very different, as Point's tool bar looks like a standard Windows tool bar, while the Encompass tool bar consists of large tabs on the far left and right of the display. Encompass contains two large windows on the left of the display. One window contains a log for various important dates in the loan process. See Second Alcaraz Decl., Ex. 4-D. The other window contains various forms and other tools. Id.

Not only do the images of the screen displays at issue contain marked differences, but the user of the software must first venture through a variety of screens to reach the screen displays that form the basis for plaintiff's suit. See Visnick Decl. at 4-13. These necessary steps differ greatly, and clearly identify the products as "Encompass" and "Point."[8] See Visnick Decl. at 5, 10. Therefore, in order to reach the allegedly infringing screen displays, the user must first view a series of screen displays that differ greatly between Encompass and Point and clearly designate their origin.

The Court finds that plaintiff has failed to demonstrate a likelihood of confusion of origin, when the screen displays are viewed in their entirety. Therefore, the Court GRANTS defendant's motion for summary judgment on plaintiff's Lanham Act claim for failure to demonstrate likelihood of actual confusion, as to the specific screens at issue in this motion.

---

[7] Defendant objects to these documents as hearsay and lacking in foundation.

[8] Point's log in screen also references Calyx.

United States District Court

For the Northern District of California

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for partial summary judgment on plaintiff's copyright and Lanham Act claims, as to the eight screens at issue in this motion. [Docket #100.].

**IT IS SO ORDERED.**

Dated: August 19, 2005

_____SUSAN
ILLSTON
United States District Judge

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    CALYX TECHNOLOGIES, INC., et al.,                No. C 04-1640 SI

9              Plaintiffs,                            **ORDER GRANTING MOTION FOR**
        v.                                            **SUMMARY JUDGMENT**

10   ELLIE MAE, INC.,

11             Defendant.

12   _____/

13        On August 19, 2005, the Court heard argument on defendant's motion for partial summary judgment.

14   Having considered the papers on file and the arguments of the parties, the motion is GRANTED for the reasons

15   set out below.

16

17                              **BACKGROUND**

18        Plaintiff Calyx Technologies, Inc. designs, markets, sells and distributes loan origination software (LOS)

19   for use by mortgage brokers and lenders.  Calyx's top-selling software program, Point, had a market share

20   above 65% in 2002 and 2004.  Defendant Ellie Mae also designs, markets, sells and distributes loan processing

21   software for use by mortgage brokers and lenders. Ellie Mae purchased two LOS providers, Genesis 2000

22   and Contour Software, in 2000-2001.  Additionally, in Fall 2003, Ellie Mae introduced Encompass, a new

23   LOS program.

24        Both Encompass and Point provide the user with a variety of forms necessary to processing a loan.

25   For example, the programs allow the user to input the customer's personal information, such as name, address,

26   and phone number.  The programs also contain functions that allow the customer to contrast the costs between

27   renting a property and purchasing one, or between various types of loans.  These functions are all performed

28   based on the user's input of customer data into the program.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    While the parties disagree over the motivation behind the creation of Encompass, it is clear that the

2    program performs many of the same functions as Point and contains portions of screen images that look similar

3    to comparable Point images.  As a result, Calyx filed suit in this Court, asserting causes of action against Ellie

4    Mae for 1) violation of the Lanham Act, 15 U.S.C. § 1125(a); 2) false advertising; 3) copyright infringement;

5    and 4) unfair competition under California Business and Professions Code § 17200.

6    Now before the Court is defendant's motion for partial summary judgment.  Defendant argues that it

7    is entitled to summary judgment for plaintiff's copyright (Count 3) and trade dress infringement (Count 1) claims

8    with respect to eight of the Point screens.[1]

9

10                                    **LEGAL STANDARD**

11    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

12    on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

13    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears

14    the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett,

15    477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which

16    the non-moving party will have the burden of proof at trial.  The moving party need only point out to the Court

17    that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

18    The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a

19    genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party

20    must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita

21    Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a

22    scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for

23    the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

24    In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the

25

26

27    [1] The eight Point screens at issue in this motion are: 1) "FHA Worksheet Pur"; 2) "VA Refi Worksheet"; 3) "FHA 203k Maximum Mortgage Worksheet"; 4) "Good Faith Estimate"; 5) "Loan Application"; 6) "HMDA"; 7) "Aggregate Escrow Account"; and 8) "Tracking: Trust Account."  The rulings

28    made hereafter relate only to these screens.

non-moving party, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

**DISCUSSION**

**1.      Copyright**

Plaintiff's Third Cause of Action is for copyright infringement under 17 U.S.C. § 501.  Defendant argues that it is entitled to summary judgment on plaintiff's copyright claim based on the "blank forms" doctrine set out in Bibbero Systems, Inc. v. Colwell Systems, Inc., 893 F.2d 1104  (9th Cir. 1990); based on the doctrines of merger and *scenes a faire*; and based on plaintiff's failure to satisfy the originality requirement.

In order to prevail on its copyright claim, plaintiff must demonstrate ownership of a valid copyright in the allegedly infringed work and copying of protected expression in the allegedly infringed work by defendant.  Triad Systems Corp. v. Southeastern Express Co., 64 F.3d 1330, 1335 (9th Cir. 1995).  Plaintiff registered a copyright for the screen images at issue in this motion.  See Goldman Decl., Exs. 32-36 (obtaining copyright for Point program, "screen displays" for Point, and "revised compilation of terms and revised and additional text on screen displays").  "[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid."  Bibbero Systems, 893 F.2d at 1106.  Therefore, when defendant seeks summary judgment on the basis that plaintiff's screen images are not entitled to copyright protection, defendant  bears the burden of demonstrating invalidity.

It should first be noted that the underlying computer source code for the Point LOS is clearly protected by copyright; the parties do not dispute this.  However, it is also undisputed that defendant did not copy Point's source code to create the Encompass program.  Therefore, the underlying source code is not at issue in this case.

It is somewhat more difficult to determine what is at issue in this case.  Plaintiff has not clearly identified what elements of the Point program it claims are protected by copyright.  Instead, plaintiff merely asserts that the "screen displays" are protected.[2]  Plaintiff at one point refers to "text, calculators, password protectors,

---

[2] Plaintiff also uses the term "screens" when discussing protectable material.

3

United States District Court
For the Northern District of California

descriptors, autopopulation, active field highlighting, [and] lock boxes" on the "screens." Opp'n at 14. Plaintiff later asserts that the screens are copyrightable because "the text, compilation, and software read by the computer (automation) are designed to guide the mortgage professional in providing information necessary to complete the loan origination process." Opp'n at 16.

Plaintiff thus creates a moving target by presenting various explanations for what portion of the Point LOS is protected by copyright. In failing to articulate the scope of copyright protection for Point, plaintiff has ignored Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994), which stated that:

> Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection before works are considered "as a whole."

Plaintiff contends that the analytic dissection requirement does not apply because Apple involved a licensing agreement between the parties in the litigation, which this case does not. However, courts must make distinctions between protectable and unprotectable material even in cases that do not involve license agreements. See Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 207-208 (9th Cir. 1989). Therefore, plaintiff should have described the scope of copyright protection it claims for the Point program in its opposition to defendant's motion. Because plaintiff did not, the Court will address this issue on its own.

If plaintiff asserts that features of Point such as calculators, password protectors, lock boxes, autopopulation, and other methods of operation fall under the protection of copyright, the Court finds that no such protection exists. Copyright protection does not apply to "any idea, procedure, process, system, method of operation . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). The Copyright Office recognized this when it granted plaintiff a copyright for "compilations of terms and text" and "screen displays." The copyright makes no reference to methods of operation or any of the features listed above.[3] The protection of copyright does not apply to ideas and processes, which fall under patent protection.

---

[3] Plaintiff, in its response to defendant's First Set of Interrogatories, does not assert that the methods of operation in the Encompass program infringe on its copyright. See Lambert Reply Decl., Ex. A at 3-5. Instead, plaintiff asserts that the Encompass "screen displays" constitute specific instances of infringement. Id. at 3.

United States District Court
For the Northern District of California

4

United States District Court

For the Northern District of California

1    This leaves plaintiff arguable copyright protection only for the "compilations of terms and text" found

2  on the "screen displays" of the Point software.  Plaintiff asserts that Encompass, defendant's LOS, infringes

3  on its copyright because several of the Encompass screen displays look very similar to Point's screen displays.

4  Plaintiff has provided numerous copies of the screen displays in both programs, allowing the Court to compare

5  the two programs.  <u>See</u> Second Alcaraz Decl., Exs. 1-14.

6    In reviewing the screen displays from both programs, it is apparent that the Encompass screen displays

7  selected by plaintiff closely resemble comparable Point screen displays.  <u>Compare</u> Second Alcaraz Decl., Ex.

8  1-D <u>with</u> Ex. 1-E (containing "Rent vs. Own" screens for both programs). The similarity lies in the structure

9  of the screen displays and the terms used for the various entries.  The similarity is striking, but not exact:

10  Encompass does not use the same font, text color or background color as Point.  Therefore, plaintiff asserts

11  a copyright claim against defendant on the theory that the structure and terms used in the Encompass LOS

12  screen displays infringe plaintiff's copyright in Point.

13    The Court finds that plaintiff's copyright claim must fail under <u>Bibbero</u>, which established a strict

14  interpretation of the "blank forms" doctrine for the Ninth Circuit.  In <u>Bibbero</u>, plaintiff designed and marketed

15  "superbills" that were used by doctors to obtain reimbursement from insurance companies.  893 F.3d at 1105.

16  The superbill contained boxes for patient information, clauses assigning insurance benefits to the doctor and

17  authorizing release of patient information, and two "lengthy" checklists for the doctor to display the diagnosis,

18  services performed, and the fee.  <u>Id.</u>  Plaintiff produced approximately 25 superbills in its catalog for various

19  specialties.

20    Defendant produced a superbill that "was nearly identical to" plaintiff's superbill.  <u>Id.</u> at 1106.  After

21  defendant's superbill came to plaintiff's attention, it filed an application to register its superbill with the Copyright

22  Office, which was granted.  Plaintiff also filed suit against defendant for copyright infringement.  <u>Id.</u>   The court

23  recognized that the copyright registration was prima facie evidence of copyrightability, but found that the

24  superbill was an uncopyrightable blank form.  <u>Id.</u>   The court stated that "[t]he purpose of the Bibbero's

25  superbill is to record information.  Until the superbill is filled out, it conveys no information about the patient,

26  the patient's diagnosis, or the patient's treatment."  <u>Id.</u> at 1107.

27    As in <u>Bibbero</u>, plaintiff is claiming copyright protection for a series of forms created to allow the user

28

5

1    to collect various pieces of information. Until the user inputs information, the form in this case contains no

2    information about the customer seeking a mortgage.  In viewing the screen displays involved in this lawsuit,

3    each display contains numerous empty boxes designed specifically for the user to input data.  The forms do not

4    contain any text aside from labels to each of the empty boxes.  In this respect, the forms in this case are very

5    similar to those in <u>Bibbero</u>.

6            The Court recognizes that <u>Bibbero</u> has been criticized by commentators and other circuits.  <u>See</u> <u>Advanz</u>

7    <u>Behavioral Management Resources, Inc. v. Miraflor</u>, 21 F.Supp.2d 1179, 1189 (C.D.Cal. 1998) (describing

8    criticism of <u>Bibbero</u>).[4]  However, this Court is bound by Ninth Circuit precedent, including <u>Bibbero</u>.  Under

9    <u>Bibbero</u>, "the blank forms rule denies copyrightability to forms consisting entirely of spaces for the recording

10   of information, whether labeled or unlabeled, that are not accompanied by text conveying information, such as

11   instructions regarding the use of forms." <u>Advanz</u>, 21 F.Supp.2d at 1189.  <u>Bucklew v. Hawkins, Ash, Baptie</u>

12   <u>& Co.</u>, 66 U.S.P.Q.2d 1820 (7th Cir. 2003), on which plaintiff relies to support its argument that its screen

13   displays are copyrightable,  is both factually distinguishable from this case and substantially inconsistent with

14   the analysis and holding in <u>Bibbero</u>.[5]

15           Plaintiff suggests several reasons why the <u>Bibbero</u> doctrine does not apply, but none is persuasive.  It

16   first notes that the forms at issue in this case are found on a computer screen, while the forms in <u>Bibbero</u> were

17   on paper.  This distinction, however, does not appear to the Court to make any difference, and plaintiff does

18   not supply one.  Plaintiff argues that the forms in its program have "text, calculators, password protection,

19   descriptors, autopopulation, active field highlighting, [and] lock boxes," unlike <u>Bibbero</u>.  However, as discussed

20   above, plaintiff cannot receive copyright protection for methods of operation.  It is the "screen displays" that

21   plaintiff claims are copyrightable, not the functionality of the program.  The structure and appearance of the

22   displays would be very similar if found on a computer screen or printed on paper.  Therefore, this argument

23

24   _____

25       [4] <u>Advanz</u> also provides a thorough description of the "blank forms" doctrine as interpreted by the Ninth
     Circuit.  21 F.Supp.2d at 1186-1190.

26       [5] <u>Bucklew</u> dealt "primarily to the copyright doctrines of merger and *scenes a faire*," rather than the
     blank forms question.  66 U.S.P.Q.2d at 1824.  Additionally, the defendant in <u>Bucklew</u> copied plaintiff's font,
27   which was unavailable to defendant through any means aside from directly copying plaintiff's, and included
     tables from plaintiff's spreadsheet that contained no function in the program at issue.  <u>Id.</u> at 1822.  Neither of
28   these factors is present in this case.

is not persuasive.

Plaintiff argues that <u>Bibbero</u> does not apply because "the information that is found on each of the screens guides the user to how to successfully complete – in Calyx's view – that portion of the loan origination process." Opp'n at 15, quoting Cooley Decl. at ¶ 85. However, this argument was specifically rejected in <u>Bibbero</u>: "All forms seek only certain information, and, by their selection, convey that the information sought is important." 893 F.2d at 1107.[6] Finally, plaintiff argues that the screen displays are original creations containing an artistic element. However, the court in <u>Bibbero</u> refused to consider the effort and creativity required to create the forms in question. 893 F.2d at 1108 n. 2.

The Court finds that the text and structure of plaintiff's screen displays are not copyrightable under <u>Bibbero</u>. Plaintiff does not allege that defendant copied its source code in creating Encompass. Plaintiff cannot claim copyright protection for functions and methods of operation for the Point LOS, because they are precluded under copyright law. Once these aspects of plaintiff's program are stripped away, what remains is a series of forms used to collect information from a customer seeking a mortgage. The program provides no relevant information about the customer until the relevant customer information is input into the program by the user. This is similar to the superbill in <u>Bibbero</u>, which collected information about medical patients. In reviewing the screen displays presented by plaintiff, the predominant feature of the screens is the blank spaces designed specifically for the user to input the relevant customer data. Although others may disagree with the rationale of the "blank forms" rule, <u>Bibbero</u> is binding precedent on this Court.

Therefore, the Court finds that plaintiff does not have a valid copyright for the Point screen displays at issue in this case and GRANTS defendant's motion for summary judgment on plaintiff's copyright claim.

**2.    Trade dress**

Plaintiff's First Cause of Action is for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides a cause of action against any person who uses "any symbol or device . . . likely to

---

[6] Additionally, the court in <u>Bibbero</u> rejected the holding of <u>Norton Printing Co. v. Augustana Hospital</u>, 155 U.S.P.Q. 133 (N.D.Ill. 1967), which found copyrightable a medical laboratory test form because the format and arrangement used in the forms conveyed what information is deemed to be important.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    cause confusion . . . as to the origin of his or her goods." This provision protects words and symbols, as well

2    as the packaging and design of a product, which is known as "trade dress." As defined by the Ninth Circuit,

3    trade dress "refers to the total image of a product and may include features such as size, shape, color, color

4    combinations, texture or graphics." International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822

5    (9th Cir. 1993).

6         Plaintiff asserts that the screen designs provided in the Second Amended Complaint qualify as

7    protected trade dress. See Second Amended Complaint, Ex. 1. However, the images provided by plaintiff

8    in the SAC do not constitute the "total image" of the product, but rather are only portions of the screens viewed

9    by a user of Point or Encompass. See, e.g., Visnick Decl., Ex. B (showing full image created by Point and

10   Encompass programs). The exhibits to the SAC omit approximately one-fourth of the actual image on the

11   screen, which includes the logo and the word "Point" in the top left corner, and the toolbars above and below

12   the various forms. In addition, the Encompass screens contain two windows to the left of the forms at issue,

13   which were omitted in the SAC. All of these features, omitted in the SAC, differ greatly between Point and

14   Encompass.

15        Plaintiff argues that these portions of the screen image are not part of the "total image" for purposes

16   of trade dress because they are not the "most important screens." Cooley Decl. at ¶¶ 109-128. Instead,

17   plaintiff argues that the images it included in the SAC are "crucial to the processing of a loan and on a use-

18   weighted basis are by far the most important screens in any LOS." Id. However, plaintiff provides neither

19   authority nor convincing explanation for why these omitted portions of the LOS screens are not part of the

20   "total image" for purposes of trade dress, since they are all visible during use of the LOS programs. The Court

21   finds that everything presented by the Encompass and Point programs, when the screens at issue are displayed,

22   constitutes the "total image" for purposes of trade dress protection.

23        In order to recover for trade dress infringement under the Lanham Act, plaintiff must demonstrate that:

24   1) the design of the Point screen displays is non-functional; 2) the design has acquired secondary meaning; and

25   3) there is a likelihood that the consuming public will confuse Encompass with Point. Disc Golf Association,

26   Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1005 (9th Cir. 1998). Defendant argues that plaintiff has failed

27   to meet any of these requirements. The Court finds that defendant is entitled to summary judgment because

28

8

United States District Court

For the Northern District of California

1  plaintiff has failed to demonstrate a likelihood of confusion as to the source or origin of the products.

2      Defendant asserts that once the screen displays are viewed as a whole, without eliminating the material

3  around the image of the form, Encompass can be easily distinguished from Point. Plaintiff responds that there

4  is a strong likelihood of confusion or origin based on the similarity of the images, relying on the declaration of

5  Scott Cooley, plaintiff's expert.

6      The Ninth Circuit has considered the following factors when determining the likelihood of confusion of

7  origin: 1) similarity of the conflicting designations; 2) relatedness of the two companies' products; 3) strength

8  of Calyx's trade dress; 4) marketing channels used; 5) degree of care likely to be exercised by purchasers; 6)

9  Ellie Mae's intent in selecting its mark; 7) evidence of actual confusion; and 8) likelihood of expansion in

10  product lines. Brookfield Communications v. West Coast, 174 F.3d 1036, 1055 (9th Cir. 1999). The

11  importance of these factors is case-specific. Id.

12      It is clear that Calyx and Ellie Mae sell products that are very similar and use similar marketing channels.

13  Plaintiff contends that there is likelihood of confusion as to the source of Encompass and Point based on the

14  declaration of Scott Cooley, plaintiff's expert. In support, plaintiff specifically cites the following testimony from

15  Cooley:

16          I believe that users wonder why the two products are identical. Most
           software applications in any field have a unique look and feel . . . . I
17          believe this creates confusion in our industry and it has allowed [Ellie Mae]
           to take advantage of Calyx's years of input screen refinement. By creating
18          screens that look more like Point, users are far more likely to try using
           Encompass because they believe Encompass has the same favorable
19          qualities that users have come to expect from Point.

20  Cooley Decl. at ¶ 114.

21      However, Cooley provides no basis for his "belief" that users wonder why the two products are

22  identical. There is no citation to any specific facts in support of his assertion, which must be provided to

23  withstand a motion for summary judgment. See Guidroz-Brault v. Missouri Pacific Railroad Company, 254

24  F.3d 825, 831 (9th Cir. 2001).

25      Plaintiff does not present any evidence of actual confusion through consumer surveys, which could

26  clearly establish, without relying on speculative expert testimony, that actual confusion as to origin exists.

27  Plaintiff argues that it has demonstrated actual confusion through Exhibits 28-30 of the Goldman Declaration.

28

Even if these documents withstand evidentiary objection,[7] they do not demonstrate actual confusion as to the source of the screen displays at issue in this case. Additionally, exhibits 29 and 30 do not involve Encompass. See Ex. 29 at 1 ("It actually doesn't have any direct connection to Encompass"); Ex. 30 (discussing Ellie Mae's ePass product, not Encompass). Therefore, plaintiff has not identified a customer that was confused as to the source of the screen displays at issue in this case.

Finally, plaintiff argues that the Court should find a likelihood of confusion as to source based on the similarity between the Point and Encompass screen displays at issue. It is clear that the portion of the displays that contains the various forms is highly similar. However, as discussed above, the Court will not view the forms in a vacuum. Instead, they must be viewed as a part of a larger screen image. This image contains each program's name and logo, which are not similar. The display also includes a tool bar at the top of the screen. These tool bars are very different, as Point's tool bar looks like a standard Windows tool bar, while the Encompass tool bar consists of large tabs on the far left and right of the display. Encompass contains two large windows on the left of the display. One window contains a log for various important dates in the loan process. See Second Alcaraz Decl., Ex. 4-D. The other window contains various forms and other tools. Id.

Not only do the images of the screen displays at issue contain marked differences, but the user of the software must first venture through a variety of screens to reach the screen displays that form the basis for plaintiff's suit. See Visnick Decl. at 4-13. These necessary steps differ greatly, and clearly identify the products as "Encompass" and "Point."[8] See Visnick Decl. at 5, 10. Therefore, in order to reach the allegedly infringing screen displays, the user must first view a series of screen displays that differ greatly between Encompass and Point and clearly designate their origin.

The Court finds that plaintiff has failed to demonstrate a likelihood of confusion of origin, when the screen displays are viewed in their entirety. Therefore, the Court GRANTS defendant's motion for summary judgment on plaintiff's Lanham Act claim for failure to demonstrate likelihood of actual confusion, as to the specific screens at issue in this motion.

---

[7] Defendant objects to these documents as hearsay and lacking in foundation.

[8] Point's log in screen also references Calyx.

10

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for partial summary judgment on plaintiff's copyright and Lanham Act claims, as to the eight screens at issue in this motion. [Docket #100.].

**IT IS SO ORDERED.**

Dated: August 19, 2005

_____SUSAN ILLSTON
United States District Judge